IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

THOMAS R.,

        Plaintiff,

    v.                                      Civil Action No.
                                                3:20-CV-0545 (DEP)

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[1]

        Defendant.

_____

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF

LACKMAN GORTON LAW FIRM        PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.            CHRISTOPHER L. POTTER, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

---

[1]     Plaintiff's complaint named Andrew M. Saul, in his official capacity as the Commissioner of Social Security, as the defendant. On July 12, 2021, Kilolo Kijakazi took office as the Acting Social Security Commissioner. She has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was heard in connection with those motions on September 24, 2021, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated:   September 29, 2021
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THOMAS R.,

                         Plaintiff,

vs.                                              3:20-CV-545

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                         Defendant.

------------------------------------------------------------x
```

*DECISION* - September 24, 2021

the HONORABLE DAVID E. PEEBLES

United States Magistrate-Judge, Presiding


APPEARANCES (by telephone)

For Plaintiff:    LACHMAN, GORTON LAW FIRM
                  Attorneys at Law
                  1500 East Main Street
                  Endicott, NY 13761
                    BY:  PETER A. GORTON, ESQ.

For Defendant:    SOCIAL SECURITY ADMINISTRATION
                  15 New Sudbury Street
                  Boston, MA 02203
                    BY:  CHRISTOPHER LEWIS POTTER, ESQ.


*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1               THE COURT:  Thank you both for excellent
2    presentations.  I've enjoyed working with you.
3               I have before me a challenge to an adverse
4    determination by the Commissioner of Social Security brought
5    by the plaintiff pursuant to 42, United States Code, Sections
6    405(g) and 1383(c)(3).  The background is as follows.
7               Plaintiff was born in September of 1970.  He is
8    currently 51 years of age.  He was 44 years old at the
9    alleged onset of disability in April of 2015.  Plaintiff is
10   obese.  He stands between 5-foot-9 and 5-foot-11 in height
11   and has weighed at various times approximately 330 pounds.
12              Plaintiff lives in Binghamton with his so-called
13   common law wife, even though New York doesn't recognize
14   common law marriage, of more than twenty years.  Plaintiff
15   has a twelfth grade education and attended regular classes
16   while in school.  He is right-handed and has a driver's
17   license and does drive.
18              Plaintiff stopped working in March of 2014.  His
19   past work has included as a developmental aide, an
20   investigator, working in Walmart beginning as a cart person
21   and working his way to be a maintenance/cleaning person and
22   ultimately a photo lab tech.  His last job was as a security
23   officer.  He claimed at page 129 of the Administrative
24   Transcript that he left that job because he had trouble with
25   the vehicle and because of the cost of commuting.

1      Plaintiff suffers from a history of heart disease,
2 including chronic atrial fibrillation, which I will call
3 A-fib; Type 2 diabetes; hypertension; high blood pressure;
4 asthma; obesity; sleep apnea, which he treats with a CPAP
5 machine.  He also has bouts of diarrhea and claims that he
6 suffers from irritable bowel syndrome, although I did not
7 find any actual diagnosis from a treating source of IBS.
8      Plaintiff had hernial and intestinal surgery in
9 December 2016.  He ended up spending 22 to 23 days in the
10 hospital suffering from a sepsis infection.  There are no
11 records of that hospitalization.  He had a left heart
12 catheterization and coronary angiography in May of 2013.
13 That appears at 391 to 392 of the Administrative Transcript.
14 And a quadruple bypass in March of 2018.  The records are at
15 90 to 92 of the Administrative Transcript.  He also underwent
16 cardiac catheterization in January of 2018.
17      Plaintiff's primary physician is Dr. Kevin
18 Gallagher.  His cardiologist has been Dr. Hisham Kashou.  He
19 has also seen family Nurse Practitioner Ashlee Fish; Nurse
20 Practitioner Enid Nixon; Physician's Assistant Courtney
21 Ellis; Dr. Khan, who performed the bypass surgery;
22 Dr. Tvetenstrand, who performed the hernial surgery.  And
23 Dr. Kahn's first name is Ahmed.  Plaintiff does not smoke and
24 does not consume alcohol.
25      Plaintiff has been prescribed various medications

1  over time primarily to address his diabetes and his
2  cholesterol issue and a thyroid issue.  He was also on
3  Plavix, which is a blood thinner.
4          In terms of activities of daily living, plaintiff
5  is able to shower, groom, dress, clean, do laundry, prepare
6  meals, wash dishes.  He shops with his common law wife.  He
7  is a musician; he plays piano.  He writes music and creates
8  music videos.  He feeds his cats.  He walks his dog two times
9  per day, exercises.  He designs computer graphics, watches
10 television, and listens to the radio.
11         Procedurally, plaintiff applied for Title II and
12 Title XVI benefits on February 29, 2016, alleging an onset
13 date of April 22, 2015, and claiming disability based on high
14 blood pressure, asthma, heart disease, Type 2 diabetes, low
15 blood sugar, and IBS.
16         On May 25, 2018, a hearing was scheduled but was
17 adjourned partly into the hearing to allow plaintiff to seek
18 representation.  A subsequent hearing was conducted by
19 Administrative Law Judge Mark A. Clayton on November 7, 2018.
20 Plaintiff appeared without representation.  His request for a
21 second adjournment was denied.  There was a vocational expert
22 who testified at that proceeding.
23         The Administrative Law Judge issued a decision on
24 January 25, 2019 that was adverse to plaintiff.  That became
25 a final determination of the Agency on March 25, 2020 when

1  the Social Security Administration Appeals Council denied his
2  request for review.  This action was commenced on May 15,
3  2020 and is timely.  The Administrative Law Judge in his
4  decision applied the familiar five-step sequential test for
5  determining disability.  He first noted that plaintiff's last
6  date of insured status was September 30, 2018.
7           He first found at step one that plaintiff had not
8  engaged in substantial gainful activity since April 22, 2015.
9           At step two, he concluded that plaintiff does
10 suffer from severe impairments that impose more than minimal
11 limitations on his ability to perform basic work functions,
12 including high blood pressure, asthma, heart disease,
13 diabetes type 2, and obesity.
14          At step three, the Administrative Law Judge
15 concluded that plaintiff's conditions do not meet or
16 medically equal any of the listed presumptively disabling
17 conditions set forth in the Commissioner's regulations,
18 specifically considering listings 3.03, 4.00(H), 4.04, and
19 9.00, as well as Social Security Ruling 02-1p addressing
20 obesity, and 14-2p addressing diabetes.
21          The Administrative Law Judge next concluded that
22 plaintiff retains the residual functional capacity, or RFC,
23 to perform sedentary work as defined.  He went on to specify
24 additional limitations, and significantly to this argument
25 noted that the plaintiff would need to alternate positions at

1   the workstation every thirty minutes without leaving his
2   workstation in order to relieve discomfort.  The ALJ,
3   therefore, concluded that plaintiff was not disabled.
4          I note that there is a typographical error in the
5   Administrative Law Judge's decision where he states that
6   there are 850,000 positions available in the addresser
7   category, at page 20.  The vocational expert testified to a
8   number of 8,500.  But that is certainly a harmless error
9   because there is still positions available in sufficient
10  numbers to support the step five determination.
11         As you know, the Court's function in this case is
12  limited to determining whether correct legal principles were
13  applied and the resulting determination is supported by
14  substantial evidence, which is defined as such relevant
15  evidence as a reasonable mind would find sufficient to
16  support a conclusion.  As the Second Circuit noted in *Brault*
17  *versus Social Security Administration Commissioner*, 683 F.3d
18  443 from 2012, this is an extremely deferential standard.  It
19  is a more stringent standard than even the clearly erroneous
20  standard that we're all familiar with.  Under that standard
21  when a fact is found, it can be rejected only if a reasonable
22  factfinder would have to conclude otherwise.
23         In this case plaintiff makes three basic
24  contentions.  First, he asserts that under the regulations in
25  effect prior to the claims filed prior to March of 2017, the

1  treating source rule should have been applied and
2  Dr. Gallagher's opinion should have been given controlling
3  weight, and specifically addresses the need to change
4  positions at will and the fact that the plaintiff can only
5  lift up to 9 pounds.
6  　　　　　Second, plaintiff contends the RFC determination is
7  unsupported and that the sit/stand limitation set forth in
8  the RFC, meaning every thirty minutes, is arbitrary and based
9  totally on the Administrative Law Judge's lay opinion and
10 overlooks Dr. Gallagher's uncontradicted opinion.
11 　　　　　Third, he challenges the weight given to
12 Dr. Jenouri's opinion and states that a one-time examiner's
13 opinion is not entitled to great weight.  The focus, of
14 course, is on the lifting and the changing of positions and
15 whether plaintiff can stand for up to two hours.  I note as
16 an overarching consideration under *Veino against Barnhart*,
17 212 F.3d 578 (2d Cir. 2002), when there is conflicting
18 medical evidence in the record, resolution of those conflicts
19 is entrusted at least in the first instance to the
20 Administrative Law Judge.
21 　　　　　The first argument is the treating source argument.
22 Dr. Kevin Gallagher on September 18, 2017 issued a one-page
23 opinion.  It appears at page 537 of the Administrative
24 Transcript.  It is primarily a check-box form.  It opined
25 that plaintiff has the ability to walk, stand, bend and sit

1  with normal breaks during an eight-hour workday (continuous
2  blocks of time), walking up to two hours max per day,
3  standing up to two hours max per day, and sitting up to five
4  to six hours max per day.
5        The form does ask whether the plaintiff would need
6  to periodically alternate walking, standing, bending or
7  sitting during the workday to relieve discomfort.  The answer
8  is yes.  There is a question, "How often?"  There is no
9  checkmark there.  The second question is, "Does your patient
10 need the opportunity to do so at will throughout the
11 workday?"  And the answer is yes.  It also when addressing
12 the lifting and carrying states that plaintiff is only
13 capable of lifting and carrying zero to 9 pounds maximum, as
14 opposed to the 10 found in the residual functional capacity
15 determination.
16       The opinion of Dr. Gallagher was discussed at
17 page 18 of the Administrative Transcript.  The Administrative
18 Law Judge provided for some weight and explained why,
19 including the history of A-fib requiring extensive surgery,
20 but noted that treatment notes indicate claimant's symptoms
21 had resolved, and it is reasonable to consider the lingering
22 effects of plaintiff's conditions, and so did assign some
23 weight and did provide for a change of positions every thirty
24 minutes.
25       The Commissioner has correctly noted that despite

1   what she argued in her brief, Dr. Gallagher is a treating
2   source.  He is identified in the Administrative Law Judge's
3   decision as plaintiff's primary physician and saw the
4   plaintiff at least four times; December 17, 2014; October 22,
5   2014; September 8, 2015; and July 22, 2015.  I note that
6   Dr. Gallagher's opinion is a check-box form with no
7   explanation whatsoever, and the Second Circuit has noted that
8   such opinions are weak evidence at best.
9           As the ALJ noted, the opinion is generally
10  consistent with the RFC and is consistent with the record.
11  It deviates from the RFC in very minor ways.  In any event,
12  any error would be harmless.  The need to change positions,
13  the opinion's not contradicted, but Dr. Jenouri did not note
14  any need to change positions.  If there is error, it is
15  harmless.  Plaintiff testified he can stand for about blocks
16  of two hours, occasionally can sit in one hour segments.  147
17  to 149 of the Administrative Transcript.
18          I appreciate the invitation to educate the Second
19  Circuit as to whether or not the overwhelmingly compelling
20  standard still applies.  I respectfully decline that
21  invitation.  The Second Circuit still appears to apply that
22  standard to uncontradicted medical opinions that are rejected
23  by the Administrative Law Judge.  I don't find the need to
24  decide because the standard is met in this case, based on
25  plaintiff's testimony and Dr. Jenouri's opinion.

1          I also note that under the Dictionary of
2   Occupational Titles, the two positions at issue, document
3   preparer and addresser, both state that the work involves
4   exerting up to 10 pounds of force occasionally, meaning up to
5   one-third of the time, and significantly, sedentary work
6   involves sitting most of the time but may involve walking or
7   standing for brief periods of time.  So I don't find that
8   there is error.  If there is error, it is harmless.
9          The Administrative Law Judge did acknowledge the
10  worsening of plaintiff's symptoms leading up to his quadruple
11  bypass in March of 2017, but I agree with the Commissioner
12  that the symptoms do not appear to meet the durational
13  requirement necessary to qualify for disability.  The
14  plaintiff has suggested that the ALJ had a duty to consider a
15  closed period.  I believe that that argument is waived.  It
16  was not presented to the Administrative Law Judge.  To
17  present it now would essentially require a fact analysis that
18  was not performed.  And while I reject the request to send it
19  back for consideration of a closed period, based on *Colling*
20  *versus Barnhart*, 254 Fed. Appx. 87 (2d Cir. 2007), and also
21  *Riker versus Commissioner of Social Security,* my colleague
22  Chief Magistrate Judge Baxter, reported at 2018 WL 2464446
23  (N.D.N.Y. June 1, 2018).
24         The 9 pound limitation, the RFC opines occasional
25  lifting of 10 pounds, which is defined under regulations as

1   very little to one-third of the time, and less than 10 pounds
2   frequently.  That's at page 15.  That is consistent with the
3   regulations and the Social Security Ruling 96-9p.  Sedentary
4   work under the regulations is defined as involving lifting no
5   more than 10 pounds at a time and occasionally lifting or
6   carrying articles like docket files, ledgers and small tools.
7   So the RFC is consistent with the attributes, lifting
8   attributes of sedentary work.
9              Dr. Gallagher stated zero to 9 pounds
10  lifting/carrying consistently as part of regular job duties,
11  at 537.  I'm not sure there is that much of a conflict there
12  between Dr. Gallagher's opinion on lifting and the RFC.  But
13  even if there is error and it is consistent with the RFC, it
14  is harmless.
15             Both the document preparer and addresser consist of
16  lifting less than 10 pounds.  *Harvey versus Astrue*, 2012 WL
17  3111744 (C.D. Ill. July 30, 2012.)  In that case, in *Harvey*,
18  it said that those positions could be done with an 8 pound
19  lift and carry limitation.  Of course, the residual
20  functional capacity finding is pivoted to the step four and
21  five analysis.  An RFC generally represents a range of tasks
22  a plaintiff is capable of performing notwithstanding his or
23  her impairments and represents the plaintiff's maximum
24  ability to perform sustained work activities in an ordinary
25  setting on a regular and continuing basis, meaning eight

1  hours a day for five days a week, or an equivalent schedule.
2  An RFC is informed by consideration of all relevant medical
3  and other evidence, and of course must be supported by
4  substantial evidence.
5         The plaintiff stated, as I indicated previously,
6  that he can sit for up to one hour blocks.  The RFC
7  determination is more favorable to the plaintiff, and there
8  are several cases that suggest in that situation there is no
9  basis to remand, it would be a meaningless exercise.  The RFC
10 does not perfectly align with either Dr. Jenouri's opinion or
11 Dr. Gallagher's opinion.  Under *Matta versus Astrue*, 508 Fed.
12 Appx. 53 (2013), that's perfectly acceptable provided it's
13 supported by substantial evidence.  That the ALJ chose a more
14 restrictive limitation based on the record as a whole, as I
15 indicated, is not a basis to remand.  *Tammy B. versus*
16 *Commissioner of Social Security*, 382 F Supp. 3d, 184 (N.D.N.Y
17 June 2019).  I believe the RFC is supported by substantial
18 evidence, including specifically Dr. Jenouri's opinion and
19 Dr. Gallagher's when placed side by side.
20        The treatment of Dr. Jenouri, the argument is that
21 he is obviously not a treating source.  As a non-treating
22 source, the need to articulate good reasons from the former
23 regulations which apply to this case, because the application
24 was made prior to March 17, 2017, does not apply.
25 Dr. Jenouri after examining the plaintiff concluded

1   pertinently that plaintiff is very limited to walking and
2   standing for one hour, less than two hours; pushing, pulling,
3   and bending for one hour, less than two hours; very limited
4   ability to lift or carry 10 pounds occasionally.
5          The ALJ rejected, discussed the opinion at pages 18
6   to 19 and rejected the limitation of the ability to walk and
7   stand for less than two hours, implicitly at least.  That
8   rejection is supported by consideration of both
9   Dr. Gallagher's opinion and, more importantly, plaintiff's
10  testimony.  In any event, if there is error in that regard,
11  it's harmless because, as I previously indicated, the DOT
12  description of the two jobs cited indicate the positions
13  involve mostly sitting.
14         So, in conclusion, I believe the residual
15  functional capacity finding is supported by substantial
16  evidence.  The treating source rule was not violated.  I find
17  based on a searching review of the record that it was
18  faithfully applied.  *Estrella versus Berryhill*, 925 F.3d 90
19  (2d Cir. 2019).
20         The RFC determination being supported, I find that
21  the step five determination at which the Commissioner bears
22  the burden of proof is also supported.  It was based on
23  vocational expert testimony concerning the availability of
24  jobs in the national economy that plaintiff was capable of
25  performing, and the hypothetical presented to the vocational

1   expert tracks the residual functional capacity determination.
2   So I will award judgment on the pleadings the defendant and
3   order dismissal of plaintiff's complaint.
4           Thank you both.  Have a wonderful weekend.
5                    *              *              *

1
2                    C E R T I F I C A T I O N
3
4         I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
5    Realtime Court Reporter, in and for the United States
6    District Court for the Northern District of New York,
7    do hereby certify that pursuant to Section 753, Title 28,
8    United States Code, that the foregoing is a true and correct
9    transcript of the stenographically reported proceedings held
10   in the above-entitled matter and that the transcript page
11   format is in conformance with the regulations of the
12   Judicial Conference of the United States.
13
14
15
16                        _____
                                *Eileen McDonough*
17                        EILEEN MCDONOUGH, RPR, CRR
                          Federal Official Court Reporter
18
19
20
21
22
23
24
25